IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GEORGIA-PACIFIC, LLC | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, | ) | |
| | ) | Civil Action No. 7:13-CV-332 |
| v. | ) | |
| | ) | |
| WESTERN EXPRESS, INC., | ) | |
| | ) | By: Hon. Robert S. Ballou |
| NATIONAL CASUALTY COMPANY, | ) | United States Magistrate Judge |
| | ) | |
| Defendants/Counterclaim-Plaintiffs. | ) | |

## MEMORANDUM OPINION

In this declaratory judgment action, I find that Western Express, Inc. ("Western Express") has no duty to defend Georgia Pacific, LLC ("Georgia Pacific") in an underlying tort case brought by a Western Express driver who was injured while securing a load of wood to his truck while on Georgia Pacific property. Accordingly, I **DENY** Georgia-Pacific's Motion for Summary Judgment (Dkt. No. 48) and **GRANT** Western Express's Motion for Summary Judgment (Dkt. No. 62).

## BACKGROUND

The facts are not in dispute. On February 21, 2008, Georgia-Pacific and Western Express entered into a Carriage Agreement for Western Express to transport freight tendered by Georgia-Pacific. Section 7 of the Agreement required Western Express to defend, save harmless and indemnify Georgia-Pacific from certain liabilities arising from Western Express's performance under the Carriage Agreement. The focus of this litigation is on the interpretation of this indemnity provision.

1

On May 26, 2009, Western Express employee Hosea Pack was injured at a Georgia Pacific plant located in Gladys, Virginia while securing a load of wood to his trailer. Pack filed suit against Georgia-Pacific in the Roanoke City Circuit Court to recover for his personal injuries (the "Tort Suit"). See Dkt. No. 48-2. Pack named only Georgia Pacific in the Tort Suit, alleging that his injuries occurred solely because of Georgia Pacific's negligence. Specifically, Pack asserts that Georgia Pacific failed to provide adequate fall protection, failed to provide safety equipment to prevent falls and otherwise failed to exercise reasonable care to avoid injury to another. Pack does not assert that his injuries occurred because of the negligence of any other person or entity.

Georgia-Pacific tendered its defense in the Tort Suit to Western Express, which rejected the tender on the ground that it owes no duty to defend or indemnify Georgia-Pacific in the Tort Suit where Pack's injuries occurred because of the sole negligence of Georgia Pacific.

Thereafter, Georgia-Pacific filed this declaratory judgment action, alleging that Western Express and National Casualty have a duty to defend and indemnify it in the Tort Suit. Western Express filed a counter-claim, seeking a declaratory judgment that it does not owe a duty to defend or indemnify Georgia-Pacific in the Tort Suit. I bifurcated the claim relating to Western Express's duty to defend Georgia-Pacific in the Tort Suit and stayed the remaining issues in the case until the Tort Suit is resolved. Dkt. No. 61. The parties subsequently filed cross-motions for summary judgment as to the duty to defend.[1]

---

[1] Georgia-Pacific was also named as an additional insured on Western Express's automobile liability policy with defendant National Casualty, and tendered its defense in the Tort Suit to National Casualty under that policy. National Casualty rejected the tender on the grounds that Georgia-Pacific does not qualify as an insured under the policy. National Casualty's duty is not addressed in the parties' motions

2

## ANALYSIS

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility but to determine whether there is any genuine issue of fact...." JKC Holding Co., LLC. v. Washington Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). Thus, if there is a reasonable dispute as to any material fact, then summary judgment is improper. In this case, where there are cross-motions for summary judgment, each motion must be considered individually, and in considering a party's motion, the facts must be viewed in a light most favorable to the non-movant. Mellen v. Bunting, 327 F. 3d 355, 363 (4th Cir. 2003).

The parties agree that Delaware law governs the interpretation and enforcement of the Carriage Agreement.[2] The scope of the inquiry in determining the duty to defend is limited to the provisions of the Carriage Agreement and the allegations in the complaint filed in the liability suit and not to any additional facts. See Dkt. No. 60.

Section 7 of the Carriage Agreement establishes the indemnification obligation of Western Express as follows:

---

because documents exchanged during discovery confirmed that National Casualty is a re-insurer for Western Express. As such the National Casualty policy is not at issue in this litigation.

[2] A federal court sitting in diversity applies the law of the forum state. CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). Under Virginia law, where the parties to a contract have expressly declared that the agreement shall be construed under the law of another jurisdiction, the parties' choice of substantive law will govern. See Paul Business Systems, Inc. v. Canon U.S.A., Inc., 240 Va. 337, 342, 397 S.E. 2d 804, 807 (Va. 1990). Here, the Carriage Agreement contains a choice of law provision selecting Delaware as the governing law.

3

**7.    Indemnification**

CARRIER agrees to assume all risks growing out of or occurring in the performance of this Agreement by CARRIER, its agents or employees for:

*        *        *

(c)    CARRIER further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify Georgia-Pacific from and against any and all manner of suits, claims, judgments, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever on account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the operation of trucks of or by CARRIER, its agents or employees, or the conduct of the business of CARRIER, or the transportation and handling of goods by CARRIER, its agents or employees whether pursuant to this Agreement or otherwise, ***provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was solely caused by any negligent act or omission of Georgia-Pacific***.

Dkt. No. 48-3 (emphasis added).

The parties agree that the Tort Suit falls within the preamble of section 7 as a risk that grew out of or occurred in the performance of the Carriage Agreement by Western Express. Dkt. No. 62, p. 6. The parties further agree that the Tort Suit alleges negligence only against Georgia-Pacific. The parties disagree, however, as to whether the proviso in section 7(c), which states that "this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was solely caused by any negligent act or omission of Georgia-Pacific" (the "sole negligence exception"), also extends to any duty to defend Georgia Pacific in the Tort Suit.

Georgia-Pacific asserts that Western Express owes a duty to defend it in the Tort Suit pursuant to the Carriage Agreement, even though Plaintiff in the Tort Suit contends that Georgia Pacific's sole negligence caused his accident and injuries. Georgia Pacific

4

contends that the "sole negligence exception" excuses Western Express only from the duty to "hold harmless and indemnify" Georgia-Pacific from actions arising from the sole negligence of Georgia Pacific, but does not limit Western Express's duty to defend Georgia Pacific in actions arising under the Carriage Agreement. Georgia Pacific relies heavily on the fact that the "sole negligence exception" applies to this "hold harmless and indemnity" and omits the duty to defend term from the otherwise broad duties owed by Western Express under the indemnification provision. Georgia-Pacific also contends that the phrase "this hold harmless and indemnity" does not encompass the duty to defend because, under Delaware law, the word "defend" has a meaning separate and distinct from, and broader than, "indemnify and hold harmless. Thus, Georgia-Pacific interprets section 7(c) as requiring Western Express to defend the liability lawsuit even when the liability complaint alleges negligence only against Georgia-Pacific.

Conversely, Western Express argues that the phrase "this hold harmless and indemnity …" refers to all of the duties listed in section 7(c), including the duty to defend. Western Express cites two cases which have interpreted Georgia-Pacific carriage agreements with similar language in support of its position, Bruce v. Georgia-Pacific, 326 Ga. App. 595 (Ga. App. 2014) and Georgia-Pacific, LLC v. Hornady Truck Line, Inc., No. 4:07cv159, 2009 WL 484629 (N.D. Miss. Feb. 26, 2009).[3] The courts in Bruce and Hornady determined that the duty to defend did not arise when Georgia-Pacific was alleged to be solely negligent.[4]

---

[3] The sole negligence exception of the carriage agreements in Bruce and Hornady contain almost identical language as the provision at issue here, stating, "this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by any act or omission of [Georgia-Pacific]."

[4] Both cases were decided under Georgia law, thus they are only persuasive authority.

5

In Bruce v. Georgia-Pacific, 326 Ga. App. 595 (Ga. App. 2014), a truck driver sued Georgia-Pacific for personal injuries he sustained while securing his trailer. Georgia-Pacific argued that the Carriage Agreement required the truck driver's employer, TMC Transportation, to defend against the personal injury lawsuit. The court found the carriage agreement unambiguous and concluded that TMC Transportation had no duty to defend where the liability lawsuit alleged negligence only against Georgia-Pacific. The court rejected the same argument Georgia Pacific advances in this case—that the omission of the duty to defend language from the exception to indemnification allowed Georgia Pacific to look to the carrier to defend it against its sole negligence, stating:

> [W]e reject Georgia-Pacific's assertion that the absence of the words "duty to defend" from the final and exculpatory clause of Paragraph 7(c) means that the clause applies only to TMC's responsibilities to hold harmless and to indemnify. When the exculpatory clause refers to "*this* hold harmless and indemnify [sic]," it clearly refers to the paragraph's aforementioned responsibility "*to defend*, save harmless *and* indemnify" Georgia-Pacific.

Id. at 601 (emphasis in original). The court in Bruce held that because the liability complaint asserted negligence only as to Georgia-Pacific, no duty to defend arose under the carriage agreement. Id. at 602.

Likewise, in Georgia-Pacific, LLC v. Hornady Truck Line, Inc., No. 4:07cv159, 2009 WL 484629 (N.D. Miss. Feb. 26, 2009), an employee for Hornady Trucking filed suit against Georgia-Pacific for personal injuries sustained when he fell off a truck. Georgia-Pacific settled the liability suit, and filed a breach of contract action against Hornady for failing to defend the liability suit under the carriage agreement. The court found that the carriage agreement did not require the employer to defend Georgia Pacific where the liability complaint alleged negligence solely against Georgia-Pacific. The Hornady court explained its reasoning as follows:

6

> Applying Ga. Code Ann. §13-2-2(2)'s rule that words in a contract "generally bear their usual and common signification," the court concludes that the plain meaning of the term "hold harmless" means that Hornady will not be liable in any way, which would logically include a duty to defend, for any part of a claim that is asserted against [Georgia-Pacific] alone. Since the [liability lawsuit] only involved a claim asserted against [Georgia-Pacific] for their negligence, the court concludes that Hornady did not owe [Georgia-Pacific] a duty to defend and therefore does not owe them the attorneys' fees [Georgia-Pacific] incurred.

Id. at *4.

Thus, two courts have interpreted Georgia Pacific carriage agreements with indemnity provisions containing almost identical limiting language as used here. Both agreements in Bruce and Hornady broadly required the carrier to "defend, indemnify and hold harmless" Georgia Pacific for liabilities arising from the carriage agreement and both had provisions that excepted "this hold harmless and indemnity" where liability arose because of Georgia Pacific's negligence. Both courts concluded that the phrase "this hold harmless and indemnity" referred to the duties "to defend, save harmless and indemnify."[5]

Georgia-Pacific urges that Bruce and Hornady are distinguishable because they were decided under Georgia law, which provides that the duty to defend is either part of or interchangeable with the broader duty to hold harmless. Georgia-Pacific contrasts those holdings with the well-established tenant of Delaware law that the duty to defend is separate and distinct from the duty to hold harmless and indemnify. See Majkowski v. American Imaging Mgmt. Servs., LLC, 913 A.2d 572, 589 (Del. 2006) ("Certainly, under Delaware law the term "defend" has a separate meaning from "indemnify" and "hold harmless.") Notably, Georgia law also provides that defense and indemnity are separate

---

[5] The court is not aware of, and the parties have not cited, any other cases construing this language.

7

and independent duties. See Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 424 (Ga. 1998) (citing City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga. App. 206, 209 (Ga. 1998). I find that the Bruce and Hornady decisions were not based upon any particular tenant of Georgia law, but rather on the courts' analysis of the plain meaning of the contract language. I find no reason to diverge from those persuasive precedents.

"Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1159-60 (Del. 2010) (citing NBC Universal v. Paxson Commc'ns, No. 650-N, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)). Under Delaware law, the court must read a contract as a whole and give each provision and term effect, so as not to render any part of the contract language mere surplusage. Kuhn Construction, Inc. v. Diamond State Port Corp., No. 124,2009, 2010 WL 779992, at *2 (Del. Mar. 8, 2010). Further, the court should not read a contract to render a provision or term "meaningless or illusory." Kemp, 991 A.2d at 1159. When a contract is clear and unambiguous, the court should give effect to the plain meaning of the contract's terms and provisions. Id.

Reading the Carriage Agreement as a whole and giving each provision and term effect, I find that the sole negligence exception was intended to apply to all of the duties listed in section 7(c), including the duty to defend. This interpretation is consistent with the language and structure of the indemnity provision. Section 7(c) is a single sentence with multiple clauses, leading the reader to interpret the final clause, the sole negligence exception, as modifying the entire sentence. Additionally, the sole negligence exception

8

begins with the phrase "*this* hold harmless and indemnity." Dkt. No. 48-3 (emphasis added). The term "this" is a singular demonstrative, used with singular and uncountable nouns. See Cambridge Dictionaries Online, available at http://dictionary.cambridge.org/grammar/british-grammar/this-that-these-those. The word "this," therefore, reflects that the phrase "hold harmless and indemnity" is used as a singular noun, rather than multiple distinct nouns. See Bruce, 326 Ga. App. 595, 601 ("When the exculpatory clause refers to '*this* hold harmless and indemnity,' it clearly refers to the paragraph's aforementioned responsibility '*to defend*, save harmless and indemnify' Georgia-Pacific."). Finally, the drafter set forth the duties at the beginning of section 7(c) as verbs, "to defend, save harmless and indemnify," and yet describes those duties in the sole negligence exception using a singular noun, "this hold harmless and indemnity." Overall, the language of section 7(c) suggests that the drafter intended for "this hold harmless and indemnity" to encompass all of the duties owed in that section, including the duty to defend. Thus, I conclude that the plain reading of the contract is that the phrase "this hold harmless and indemnity" refers to the duties imposed at the outset "to defend, save harmless and indemnify."

Alternatively, Western Express argues that the contract term is ambiguous and should be construed against Georgia-Pacific, the drafter. Where there are two reasonable interpretations of the language in a contract, the court must construe any ambiguities against the drafter. United Westlabs, Inc. v. Greenwich Ins. Co., No. CIV.A. 09C-12048 MMJ, 2011 WL 2623932, at *9 (Del. Super. June 13, 2011) aff'd, 38 A.3d 1255 (Del. 2012) ("If a contract is ambiguous, the Court applies the well-accepted *contra preferentem* principle of construction which is that ambiguities in a contract should be

9

construed against the drafter.")  A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible to different reasonable interpretations. Id. The determination of ambiguity lies within the sole province of the court. Kemp, 991 A.2d at 1160.  Given the analysis above, I do not find the language of section 7(c) ambiguous; however, if I found the provision fairly susceptible to different reasonable interpretations, it would be construed against Georgia-Pacific and I would arrive at the same result.

Accordingly, I find that Western Express does not have a duty to defend Georgia-Pacific in the underlying tort case. I therefore, **DENY** Georgia-Pacific's Motion for Summary Judgment (Dkt. No. 48) and **GRANT** Western Express's Motion for Summary Judgment (Dkt. No. 62).  The additional claims in this declaratory judgment action shall remain stayed until the tort case is resolved.

Entered:  August 31, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge